**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DAVID O. WILLIAMS, SR.,**

        **Plaintiff,**

   vs.

**MICHAEL J. ASTRUE,**[1]

        **Defendant.**

**6:05-CV-1297**
**(NAM/GJD)**

_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| Office of Peter W. Antonowicz<br>1300 Floyd Avenue<br>Rome, New York 13440<br>*Attorney for Plaintiff* | Peter W. Antonowicz, Esq. |
| Andrew T. Baxter<br>Acting United States Attorney for the<br>Northern District of New York<br>P.O. Box 7198<br>100 S. Clinton Street<br>Syracuse, New York 13261-7198<br>and<br>Office of General Counsel<br>Social Security Administration<br>26 Federal Plaza<br>New York, New York 10278<br>*Attorneys for Defendant* | William H. Pease<br>Assistant United States Attorney<br><br><br><br><br><br>Barbara L. Spivak<br>Chief Counsel, Region II<br><br>David L. Brown<br>Assistant Regional Counsel |

**Norman A. Mordue, Chief U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I.    INTRODUCTION**

    Plaintiff David O. Williams, Sr. brings the above-captioned action pursuant to 42 U.S.C. §

405(g) and 1383(c)(3) of the Social Security Act, seeking review of the Commissioner of Social

---

[1] The complaint named Jo Anne B. Barnhart as Defendant, then the Commissioner of Social Security. On February 12, 2007, Michael J. Astrue assumed that position. Therefore, he shall be substituted as the named Defendant pursuant to Fed. R. Civ. P. 25(d)(1).

Security's decision to deny his application for disability insurance benefits ("DIB").  The Court, having considered Plaintiff's contentions and the entire administrative record, finds that the ALJ erred in finding that Plaintiff was not disabled.  Accordingly, the decision must be reversed and remanded.

**II.  BACKGROUND**

Plaintiff was born in 1959; at the time of the administrative hearing held in this matter on January 13, 2005, Plaintiff was forty-five years old.  Administrative Transcript at pp. 65, 278.[2]  Plaintiff completed high school.  AT 115.  He has prior work experience as a stocker, gas station attendant, printing press operator, and volunteer fireman.  AT 21, 110, 284-88.

Plaintiff alleges that he is disabled due to the condition of his neck, back, and ribs.[3]  AT 109.  He claims that he became unable to work due to these conditions on December 9, 2003.  *Id.*

In 1993, Plaintiff injured, *inter alia*, his back while working at a gas station.  AT 173.  In 1998 and 2003, Plaintiff reinjured his back and sustained a "reaching" injury while working at a printing company.  AT 173, 182.  On May 31, 2003, Plaintiff injured his left ribs and neck during a motor vehicle accident while working as a volunteer fireman.  AT 145, 173.

**A.     Treating Sources**

**1.     Brian Berry, Registered Physician Assistant**

From September 5, 2003 to July 12, 2004, Plaintiff treated with Brian Berry, R.P.A. ("P.A. Berry") of the Slocum-Dickson Medical Group ("Slocum-Dickson").  AT 143-46, 177-78, 182.  P.A. Berry diagnosed Plaintiff as suffering from neck, back, and thoracic pain.  AT 146.

---

[2] Portions of the administrative transcript, Dkt. No. 6, filed by the Commissioner together with his answer, will be cited herein as "AT __."

[3] Plaintiff also claims that he has a history of breathing problems and seizures.  *See* AT 275.

2

P.A. Berry noted that x-rays of Plaintiff's cervical spine showed C5/6 degenerative disc disease and collapse with loss or lordotic curve.  AT 144.  An MRI of Plaintiff's cervical spine showed a disc herniation central and leftward at C5/6 and C6/7 with reversal of lordotic curve.  *Id.*  An MRI of Plaintiff's thoracic spine showed mild degenerative changes of the spine and "what appears to be an old compression fracture at the D7/D8 levels" and mild degenerative changes "from D6 down to D12."  *Id.*  An MRI of Plaintiff's lumbar spine showed evidence of stenosis at L4/5 secondary to disc bulge, mild stenosis at 3/4, mild decreased T2 signal at L3/4, L4/5, and L5, S1.  *Id.*

### 2. W. George Rusyniak, Jr., M.D.

From December 16, 2003 to October 19, 2004, Plaintiff treated with W. George Rusyniak, Jr., M.D., a neurosurgeon.  AT 147-50, 159-72, 205-12.  On February 25, 2004, Dr. Rusyniak performed an anterior cervical discectomy and fusion at C5-6 and C6-7.  AT 159-65.  X-rays taken on April 16, 2004 showed that the C5-C6 and C6-C7 disks are narrowed, "but do not appear to be fused.  Spinal alignment is unremarkable.  The vertebral body height of C5 and C6 appear minimally diminished . . . . The disc spaces and vertebral body heights are otherwise well maintained."  AT 211.

On September 14, 2004, Dr. Rusyniak noted that Plaintiff complained of a "little bit" of neck pain, "discomfort at times down his left shoulder and arm," and chronic low back pain.  AT 209.  Dr. Rusyniak opined that Plaintiff is unable to perform lifting or straining.  *Id.*  On October 19, 2004, Dr. Rusyniak opined that Plaintiff is partially disabled and totally disabled from performing his job.  AT 207.

### 3. Physical Therapy

From January 5, 2004 to February 6, 2004, Plaintiff underwent physical therapy at Sports Care Sports Medicine Network. AT 151-58. He was treated with, *inter alia*, heat packs, electrical stimulation, and ultrasound. AT 151. After twelve visits, Plaintiff had no "significant change" in his condition and was discharged. *Id.*

### 4.     M. Tucciarone, D.C.

From February 16, 2004 to December 13, 2004, Plaintiff treated with M. Tucciarone, D.C. AT 186-94, 219-28. On September 13, 2004, Dr. Tucciarone noted that Plaintiff stated that he was experiencing constant pain in the mid-thoracic area, but that Plaintiff "rated the pain 3/10 . . . with 10 being extreme pain." AT 186. Dr. Tucciarone opined that Plaintiff's prognosis is fair. AT 187.

On January 20, 2005, Dr. Tucciarone completed a Medical Source Statement in which he opined the following: Plaintiff is able to lift less than ten pounds occasionally and to stand and/or walk thirty minutes to one hour in an eight-hour workday; but Plaintiff must periodically alternate sitting and standing every thirty minutes. AT 219-21. He also indicated that Plaintiff has some manipulative and environmental limitations. AT 222-23.

### 5.     Brian Boyle, M.D.

From July to September of 2004, Plaintiff saw Brian Boyle, M.D. at Faxton-St. Luke's Healthcare ("Faxton-St. Luke's). AT 195-99. Dr. Boyle noted Plaintiff's complaints of pain in his neck, shoulders, back, lower extremities, and toes, as well as numbness in his fingers. AT 198. Dr. Boyle noted that an MRI of Plaintiff's lumbosacral spine is negative. *Id.* Dr. Boyle

4

diagnosed Plaintiff as suffering from cervical and lumbar radiculopathy for which he prescribed Neurontin.[4]  *Id.*

### B.   Examining Sources

#### 1.   Faxton-St. Luke's Healthcare

On December 10, 2003, Plaintiff was hospitalized at Faxton-St. Luke's due to left-sided chest pain.  AT 129-42.  The diagnoses included pleurisy, gastroesophageal reflux disease, and rib fracture.  AT 131.  However, an x-ray of Plaintiff's left ribs was unremarkable and showed no fracture.  AT 134.  An x-ray of Plaintiff's cervical spine showed minor degenerative changes.  AT 138.  Plaintiff's pain improved after he took various medications.  AT 129.

#### 2.   Mark Smith, M.D.

On December 14, 2003, Plaintiff was examined by Mark Smith, M.D. of Faxton-St. Luke's.  AT 203-04.  Dr. Smith was asked to evaluate Plaintiff regarding degenerative disc disease in the cervical spine.  AT 203.  Dr. Smith found that Plaintiff's "exam for cervical pathology is fairly benign."  *Id.*

#### 3.   Srinivasan Mani, M.D.

On May 13, 2004, Plaintiff was examined by Srinivasan Mani, M.D. of Slocum-Dickson. AT 180-81.  Dr. Mani performed an electrophysiological study which showed "some suggestion of a mild increased insertional activity and a few unsustained positive sharp waves involving the right gastrocnemius medial and lateral heads."  AT 181.  Dr. Mani also found a "diminished to absent right ankle reflex."  *Id.*  Dr. Mani concluded, "[This] combination of findings makes me wonder as to possible underlying mild S1 radiculopathy, in particular of the right side."  *Id.*

---

[4]  Neurontin is used to treat both partial seizures and nerve pain.  *The PDR Pocket Guide to Prescription Drugs* 944 (8th ed. 2008).

During a follow-up visit on May 24, 2004, Plaintiff showed normal fundi; full visual fields; normal cranial nerves; no drift during the motor system examination; normal tendon reflexes; normal sensory examination; and normal gait.  AT 179.

### 4.     Cynthia Silfer, M.D.

On June 23, 2004, Plaintiff was examined by Cynthia Silfer, M.D. of Faxton-St. Luke's. AT 173, 200-02.  Dr. Silfer diagnosed Plaintiff as suffering from cervical and lumbar radiculopathy, but noted that Plaintiff's "radicular symptoms to the lower extremities are very rare and sporadic and are fairly well maintained . . . . I did not see any clear radicular pattern that would indicate a need for an epidural steroid injection."  AT 201.

### 5.     Ronald Naumann, M.D.

On July 14, 2004, Plaintiff was examined by Ronald Naumann, M.D. for purposes of Plaintiff's workers' compensation case.  AT 183-85.  Dr. Naumann diagnosed Plaintiff as suffering from "status post ACDF, marginal improvement;" chronic lumbosacral strain; history of rib fracture; and history of seizure disorder.  AT 183.  Dr. Naumann noted that Plaintiff's condition "is aggravated by any kind of lifting or straining."  AT 184.

### 6.     Raymond Alessandrini, O.T.R.

On September 17, 2004, Plaintiff underwent a functional capacity evaluation by an occupational therapist, Raymond Alessandrini, O.T.R.  AT 268-70.  He indicated that Plaintiff demonstrates the ability to perform work-related activities at a minimum of a sedentary level up to four hours per day.  AT 269.  He suggested that Plaintiff continue undergoing aquatic therapy with an emphasis towards progressing to land-based therapy.  *Id.*

### 7.     Gary Kuhn, D.C.

On November 11, 2004, Plaintiff was examined by Gary Kuhn, D.C. for purposes of Plaintiff's workers' compensation claim. AT 213-17. Dr. Kuhn concluded that Plaintiff's degree of disability is a permanent disability to a moderate degree. AT 217.

### III.   PROCEDURAL HISTORY

Plaintiff filed an application for DIB on January 27, 2004. AT 65-67. The application was denied on July 21, 2004. AT 38-41. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") which was held on January 13, 2005. AT 272-329. On February 4, 2005, ALJ Reana K. Sweeney issued an unfavorable decision finding that Plaintiff is not disabled. AT 18-27. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. AT 5-8.

### IV.   ADMINISTRATIVE LAW JUDGE'S DECISION

The Social Security Act (the "Act") authorizes payment of DIB and supplemental security income ("SSI") to individuals with "disabilities." For both types of benefits, the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

An ALJ must follow a five-step sequential evaluation process when considering a claim for disability benefits. 20 C.F.R. §§ 404.1520, 416.920; *see also Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996). The determination of a claimant's request for benefits should therefore proceed as follows:

> At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the

7

agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (citations omitted).

In this case, the ALJ found at step one that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of disability. AT 22. At the second step, the ALJ determined that Plaintiff's lumbar radiculopathy and status post cervical discectomy and fusion are severe impairments. *Id.* At the third step, the ALJ concluded that those impairments neither met nor equaled any impairment listed in Appendix 1 of the Regulations. AT 23. At the fourth step, the ALJ found that Plaintiff retains the RFC to perform a limited range of sedentary work. AT 24. At the final step, the ALJ concluded that Plaintiff retains the capacity for work that exists in significant numbers in the national economy and therefore is not disabled. AT 26.

**V.     DISCUSSION**

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence" or when a decision is based on legal error. 42 U.S.C. § 405(g); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (citations omitted). As noted, the Court also reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard. *See Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999).

Plaintiff challenges the RFC determination, arguing that (1) the ALJ failed to state the medical evidence on which she relied; (2) the ALJ failed to specify the length of time Plaintiff can sit and the frequency with which Plaintiff can lift; and (3) the ALJ improperly evaluated the opinion of Plaintiff's treating chiropractor. Dkt. Nos. 13 & 15. Plaintiff also argues that the ALJ erred in evaluating his credibility. *Id.*

### A.     Residual Functional Capacity

RFC is defined as:

> "what an individual can still do despite his or her limitations . . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2) (SSA July 2, 1996)). In making an RFC determination, the ALJ must consider a claimant's physical abilities, mental abilities, and symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a). It is well-settled that "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7 (S.S.A.); *see also Balsamo v. Chater*, 142 F.3d 75, 80-81 (2d Cir. 1998). An RFC assessment must also "identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including

9

the functions in paragraphs (b), (c), and (d) of 20 C.F.R. §§ 404.1545 and 416.945."[5]  SSR 96-8p, 1996 WL 374184, at *1; *see McEaney v. Comm'r of Soc. Sec.*, 536 F. Supp. 2d 252, 258 (N.D.N.Y. 2008) (Hurd, D.J.) (finding that ALJ erred by failing to provide a function-by-function assessment of the plaintiff's capacities); *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 208 (W.D.N.Y. 2005) (finding that RFC determination is not supported by substantial evidence where ALJ failed to provide function-by-function analysis of the plaintiff's RFC).  Moreover, "[e]ach function must be considered separately (e.g., 'the individual can walk for 5 out of 8 hours and stand for 6 out of 8 hours')."  SSR 96-8p, 1996 WL 374184, at  at *5; *see Matejka*, 386 F. Supp. 2d at 208 (noting that ALJ erred by failing to address the plaintiff's abilities to sit, stand, or walk).  Only then may RFC be expressed in terms of the exertional levels of work: sedentary, light, medium, heavy, and very heavy.  SSR 96-8p, 1996 WL 374184 at *1.

Plaintiff argues that the ALJ failed to state the medical evidence on which she relied in determining his RFC.  Dkt. No. 13 at 9-10.  Plaintiff also claims that the RFC determination is incomplete because the ALJ failed to specify the length of time that Plaintiff is capable of sitting and failed to specify the frequency with which he is capable of lifting ten pounds.  Dkt. No. 13 at 8.

In her decision, the ALJ made the following RFC determination:

The claimant can perform sedentary work, or work which requires lifting and carrying up to 10 pounds and standing and/or walking up to 2 hours of an 8-hour

---

[5] The functions in paragraph (b) of sections 404.1545 and 416.945 include "certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching) . . . ."  20 C.F.R. §§ 404.1545(b), 416.945(b).  The functions in paragraph (c) of sections 404.1545 and 416.945 include "certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting . . . ."  20 C.F.R. §§ 404.1545(c), 416.945(c).  The functions in paragraph (d) of sections 404.1545 and 416.945 include "[s]ome medically determinable impairment(s), such as skin impairment(s), epilepsy, impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions . . . ."  20 C.F.R. §§ 404.1545(d), 416.945(d).

workday, with a sit/stand opinion. He can occasionally use hand/arm controls bilaterally, climb stairs, stoop, kneel, crouch and reach overhead bilaterally, but he can never climb ropes, ladders or scaffolding or crawl. He can occasionally have exposure to extreme cold, extreme humidity and concentrated exposure to water/liquids. AT 24.

Upon review of the entire record, it is unclear on what specific evidence the ALJ relied in making the RFC determination. The ALJ offered no explanation or discussion regarding the weight afforded to any of the opinions of plaintiff's treating physicians or any of the consultative examiners.[6] The ALJ failed to cite to any medical opinion to support her RFC findings. Without the benefit of such analysis, it is impossible to determine whether the ALJ's decision is supported by substantial evidence. Therefore, the Court will remand this matter to the Commissioner for further consideration, rather than reverse the decision in its entirety. *Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir. 2000) ("Upon a finding that an administrative record is incomplete or that an ALJ has applied an improper legal standard, we generally vacate and instruct the district court to remand the matter to the Commissioner for further consideration."). On remand, the ALJ must provide a narrative discussion as required by SSR 96-8p.

The Court also concludes that the RFC determination is incomplete. The ALJ specifically found plaintiff capable of performing sedentary work but failed to identify the specific amount of time Plaintiff can sit. Sedentary work generally involves up to six hours of sitting in an eight-hour workday. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996) (citation omitted). Therefore, the matter must be remanded in order for the ALJ to identify Plaintiff's specific functional

---

[6] Although not referenced by name, the ALJ cited to Dr. Rusyniak's records and noted his opinion that plaintiff was partially disabled. (T. 24). The ALJ stated "the opinion for disability is given limited weight". (T. 24). It is not clear from the decision whether the ALJ assigned "limited weight" to all of Dr. Rusyniak's opinions and conclusions.

11

limitations or restrictions and assess his work-related abilities on a function-by-function basis.[7] *See* SSR 96-8p, 1996 WL 374184, at *1

### B. Chiropractor's Opinion

Plaintiff claims that in determining his RFC, the ALJ never specifically stated the amount of weight afforded to Dr. Tucciarone's opinion. Dkt. No. 15 at 1-2. However, the ALJ specifically addressed the opinion rendered by Dr. Tucciarone. AT 24. The ALJ stated that she assigned "limited weight" to this source's opinion. AT 24. Plaintiff also claims that Dr. Tucciarone's opinion "should have been given great weight" because "the chiropractor's opinions are the only opinions from a treating source" that address Plaintiff's functional abilities. Dkt. No. 15 at 1.

According to the Regulations, a chiropractor's opinion is not a medical opinion. *Diaz v. Shalala*, 59 F.3d 307, 313 (2d Cir. 1995). Therefore, the treating physician rule does not apply to chiropractors. *Diaz,* 59 F.3d at 313; *see also Kim v. Barnhart*, 2005 WL 1107048, at *8 (S.D.N.Y. 2005). The regulations provide that medical opinions are statements from physicians and psychologists or "other acceptable medical" sources. *See* 20 C.F.R. § 404.1527(a)(2). Chiropractors are expressly listed as "other sources" whose "[i]nformation ... may also help us to understand how your impairment affects your ability to work." *See* 20 C.F.R. § 404.1513(e); *see also Diaz*, 59 F.3d at 313. It is within the ALJ's discretion to determine what weight, if any, to accord to the opinions of a chiropractor. *See Rodriguez v. Barnhart*, 2004 WL 2997876, at *8 (S.D.N.Y. 2004); *see also Diaz*, 59 F.3d at 314 (holding that under no circumstances can the regulations be read to require the ALJ to give controlling weight to a chiropractor's opinion.).

---

[7] The plaintiff also objects to the ALJ's analysis of plaintiff's ability to lift. However, the ALJ found that Plaintiff is capable of "lifting and carrying up to 10 pounds." AT 24.

In this case, the ALJ correctly assigned "limited weight" to Dr. Tucciarone's opinions. AT 24. The ALJ explained that the opinion "is not from an acceptable medical source and it is not supported by the above noted objective findings." AT 24. The ALJ also noted that Dr. Tucciarone's opinions are inconsistent with his own treatment records. Accordingly, the Court finds that there is substantial evidence to support the ALJ's determination that Dr. Tucciarone's opinions were entitled to limited weight. AT 314. Therefore, the ALJ's determination in this regard is affirmed.

**C.    Credibility**

When the evidence demonstrates a medically determinable impairment, "subjective pain may serve as the basis for establishing disability, even if such pain is unaccompanied by positive clinical findings or other 'objective' medical evidence[.]" *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979) (citation omitted). The ALJ, however, retains discretion to assess the credibility of a claimant's testimony regarding disabling pain and "to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Id.* When a claimant's testimony regarding pain suggests a greater severity of impairment than can be shown by objective medical evidence, the ALJ must consider the following factors in evaluating a claimant's symptoms and complaints of pain: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (v) treatment, other than medication, received for relief of pain or other symptoms; and (vi) any measures used to relieve pain or other symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi). If the Commissioner's findings are supported by substantial evidence, "the court must uphold the ALJ's decision to discount a

claimant's subjective complaints of pain." *Aponte v. Sec'y, Dep't of Health & Human Servs*., 728 F.2d 588, 591 (2d Cir. 1984) (citations omitted).

To the extent that Plaintiff argues that the ALJ should have found him credible because no treating or examining sources questioned his credibility, Dkt. No. 13 at 13-15, it is the ALJ's job to assess a claimant's credibility. *See* 20 C.F.R. §§ 404.1529, 416.929. Indeed, "[i]t is the function of the Secretary . . . to appraise the credibility of witnesses, including the claimant." *Aponte*, 728 F.2d at 591 (quoting *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1982) (emphasis added)).

In this case, the ALJ assessed Plaintiff's credibility in accordance with the factors set forth in the regulations. *See* 20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi). The ALJ discussed Plaintiff's daily activities, which included helping do laundry, doing dishes, taking care of personal needs, folding clothes, driving, shopping for food, and paying bills. AT 24. The ALJ also noted that Plaintiff testified that his daily activities included stretching his back, drinking coffee, watching television, attending therapy, lying down, and taking medication. AT 23. The ALJ also cited the location, duration, frequency, and intensity of Plaintiff's pain, specifically that he experiences pain his neck, back, and arms, and has "20 bad days a month." *Id.* The ALJ reviewed any precipitating and aggravating factors, noting that lifting a gallon of milk puts pressure on Plaintiff's back and that his legs hurt after ten minutes of doing dishes. *Id.* Additionally, the ALJ noted Plaintiff's allegations that he can only sit fifteen to twenty minutes, less than four hours per day, and stand less than three hours in an eight-hour day. *Id.* The ALJ also cited the type and effectiveness of Plaintiff's medication, namely that Plaintiff takes Neurontin, which "helps," and seizure medication. *Id.* The ALJ further discussed the treatment, other than medication, received for relief of pain or other symptoms, finding that Plaintiff

undergoes chiropractic treatment and "therapy."[8] *Id.* Lastly, the ALJ noted the measures Plaintiff used to relieve pain or other symptoms, such as stretching his back. *Id.*

In finding Plaintiff not entirely credible, as noted, *see supra* Part V.A.2, the ALJ pointed out the mostly normal x-rays taken in April of 2004; a negative MRI of Plaintiff's lumbar spine; the normal examination results; and the results of an EMG that showed "only mild radiculopathy." AT 24. The ALJ also noted that Plaintiff rated his pain "at only 3 out of 10" on several occasions. *Id.* The ALJ further noted that Plaintiff's radicular symptoms in the lower extremities were very rare, sporadic, and well maintained; and that there was no clear radicular pattern that would indicate the need for an epidural steroid injection. *Id.*

Accordingly, the ALJ's finding that Plaintiff's allegations were not totally credible is supported by substantial evidence. Therefore, the Court affirms the ALJ's finding in this regard.

## VI. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the decision denying disability benefits be **REVERSED** and this matter be **REMANDED** to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g)[9] for further proceedings consistent with the above; and it is further

**ORDERED** that pursuant to General Order # 32, the parties are advised that the referral to a Magistrate Judge as provided for under Local Rule 72.3 has been **RESCINDED**, as such, any appeal taken from this Order will be to the Court of Appeals for the Second Circuit.

---

[8] Plaintiff testified that he attends "water therapy." AT 295.

[9] Sentence four reads "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Dated:  September 30, 2008
       Syracuse, New York

_____
Norman A. Mordue
Chief United States District Court Judge

16